# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO.: 22-cr-283 |
| ERIC BOSTOCK, | |
| Defendant. | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its undersigned counsel, respectfully submits this memorandum to aid the Court in fashioning an appropriate sentence for the defendant Eric Bostock ("the defendant"). The defendant is scheduled to be sentenced on November 29, 2023, for participating in a scheme to defraud the Department of Veterans Affairs ("VA") education benefits program. For the reasons set forth below and in the government's sealed supplement, the government moves for a downward departure from the guidelines and submits that a sentence of 23 months in prison, followed by one year of supervised release, is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing pursuant to 18 U.S.C. § 3553(a). The government also requests that the Court order the defendant to pay restitution to the VA .

## I. INTRODUCTION

On September 9, 2022, the defendant pleaded guilty to a criminal information charging him with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. ECF No. 1. On November 21, 2023, the United States Pretrial Services and Probation Office ("Probation") issued its Presentence Investigation Report ("PSR") and recommended sentence. The United States has no legal or factual objections to the PSR.

II. **The Defendant's Criminal Conduct**

This case involves a large-scale, long-running fraud committed on a VA educational benefit program intended to help veterans pay for school and job training programs, called the Post-9/11 GI Bill. The defendant's older brother and co-defendant, Michael Bostock, was the founder and CEO of California Technical Academy ("CTA"), a school that provided Post-9/11 GI bill benefits to veterans. PSR ¶ 19. The defendant was CTA's Director of Student Services and a School Certifying Official ("SCO"). PSR ¶ 20.

In January 2012, the VA approved CTA as a provider of non-accredited courses to veterans and other persons receiving VA assistance for their education costs, including but not limited to tuition and housing. For the next ten years, from January 2012 to June 2022, Michael Bostock, the defendant, and others made false representations to the VA regarding veterans' enrollment in CTA's approved courses of study, class attendance, and grades. Def.'s Statement of the Offense, ECF No. 8.

To conceal their scheme, the defendant and his co-conspirators misled regulators. For example, the defendant knew that CTA maintained fraudulent contact information for veterans to ensure that CSAAVE and other agencies could not contact the veterans to verify CTA's course completion and placement records. *Id*. at 4. The defendant further knew that his co-conspirators bulk-purchased phone numbers that forwarded calls to a single cell phone and that his co-conspirators impersonated veterans when government agencies called seeking information. *Id*. The defendant agrees that impersonating veterans was deceptive, and if known to the VA, would have negatively impacted CTA's approval to receive military education benefits. *Id*.

For the ten years that the defendant furthered this fraudulent scheme, CTA received more than $32 million in tuition payments for approximately 1,793 enrolled veterans. *Id*. at ¶ 13. During

the same period, veterans enrolled in CTA's VA-approved courses received over $72 million in housing stipends and other education-related benefits. *Id.* In total, the scheme caused a total loss to the VA of more than $104 million. *Id.*

## III.  ANALYSIS

To determine an appropriate sentence, the Court must first accurately calculate the guideline range, and then consider the various factors set forth in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 49-50 (2007).

### A.  Guideline Range

Pursuant to the U.S. Sentencing Commission Guidelines Manual and plea agreement in this matter, the parties agree that the following Guidelines apply:

| | | |
|---|---|---|
| Base Offense Level | U.S.S.G. § 2B1.1(a) | 6 |
| Loss between $65-150 million | U.S.S.G. § 2B1.1(b)(1)(M) | 24 |
| Mitigating Role (Minor Participant) | U.S.S.G. § 3B1.2(b) | -2 |
| Acceptance of Responsibility | U.S.S.G. § 3E1.1 | -3 |
| Zero Point Offender | U.S.S.G. § 4C1.1 | -2 |
| Total Offense Level | | 23 |

With an offense level of 23 and a criminal history category of I, the guideline range is 46 to 57 months' imprisonment. The U.S. Probation Office concurs with this Guideline calculation. *See* PSR ¶ 149.

### B.  Section § 3553(a) Factors

On balance, the Section 3553(a) factors support a sentence at the low-end of the guideline range. The defendant committed a very serious offense, and the need to promote general deterrence and avoid sentencing disparities support a guideline sentence. However, mitigating circumstances are present, some of which are already incorporated into the guideline calculation, including the defendant's role in the offense and acceptance of responsibility. Still others, such as

the history and characteristics of the defendant and low likelihood of recidivism, on balance, weigh in favor of a sentence at the low end of the guideline range.

### 1. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

The defendant admitted to participating in what is currently the largest known Post-9/11 GI Bill benefits fraud scheme prosecuted by the U.S. Department of Justice. The defendant's scheme cost the VA more than $100 million over the course of a decade. The scope of the fraud is stunning, particularly when you consider that the scheme siphoned funds intended to help former service members learn new skills and obtain greater employment opportunities.

The goal of the VA's education benefits program is to support veterans who have served their country, often at great personal cost, by helping them transition into or advance in the workforce. The rules and regulations surrounding the VA's programs are designed to ensure that training providers, like CTA, provide quality services to veterans and properly account for the use of VA funds by accurately describing the programs provided and accurately reporting students' enrollment, course progress, and job placement. In lying to the VA about these matters and misusing funds intended to provide legitimate assistance to veterans, the defendant harmed not only the VA, but also its beneficiaries.

This was not a one-off criminal episode or temporary lapse in judgment. The defendant was CTA's Director of Student Services and a VA SCO for approximately ten years. As an SCO, the defendant was responsible for, among other things, certifying the enrollment and attendance of recipients of VA education benefits. In this role, the defendant attended conferences and training where he was advised of the VA's rules and regulations on at least an annual basis. Knowing the VA's requirements were not being met, the defendant personally supplied the VA with false and fraudulent information about CTA's programs for nearly a decade. During that

time, the defendant was personally responsible for submitting thousands of enrollment certifications, which were fraudulent claims for payment of education benefits to the VA. The defendant also prepared certifications for submission to the VA that falsely attested to CTA's compliance with the 85/15 rule, which mandated that no more than 85 percent of the school's enrollees in an approved program could be VA-funded.

As reflected in the plea agreement, the defendant was a minor participant in the overall scheme. The defendant acted at the direction of his older brother, Michael Bostock, who was the leader and organizer of the scheme. Unlike his brother, the defendant did not have an ownership interest in the school; the defendant was paid a modest salary and received little to no personal gain relative to the loss amount. Further, the defendant's awareness of the scope of the conspiracy was more limited; he worked in an administrative capacity at CTA's headquarters in Riverside, California and had less insight into operations at the school's other locations.

As for the defendant's relative culpability in the scheme, the defendant sits squarely between his charged co-conspirators. Michael Bostock, who received the statutory maximum sentence of 60 months, was undoubtedly the decisionmaker and mastermind of the scheme. However, the defendant was not a bystander. He actively participated in the fraud for a decade. In comparison, Philip Abod, who is also awaiting sentencing, was involved in the scheme for a much shorter period and played a smaller role than the defendant. As a point of comparison, Abod filed less than fifty fraudulent enrollment certifications.

The government submits that the defendant's minor role in the offense has been adequately factored into the guideline calculation, and on balance, the seriousness of the offense merits a guideline sentence.

### 2. The History and Characteristics of the Defendant

The defendant's history and characteristics present mitigating circumstances, including, but not limited to, medical conditions (PSR ¶¶ 77-82) and cognitive deficits (PSR ¶¶ 87, 96, 98). A neuropsychologist who assessed the defendant opined that the defendant's mental abilities "likely played a role in his difficulty going against [defendant Michael Bostock's] wishes and figuring out how to address his concerns" about the conduct in the instant offense." PSR ¶¶ 87, 171. Probation correctly notes that the Court may consider the defendant's mental capacity as reason for a downward variance. PSR ¶ 171; *see United States v. Leandre*, 132 F.3d 796 (D.C. Cir. 1998) (noting the goal of [U.S.S.G.] section 5K2.13 is "to treat with lenity those individuals whose reduced mental capacity contributed to the offense.") (quoting *United States v. Chatman*, 986 F.2d 1446 (D.C. Cir. 1993).

The defendant has no criminal convictions or confirmed arrests. PSR ¶¶ 54-60. When the defendant became aware of the instant investigation, the defendant was interviewed by VA Special Agents. PSR ¶ 146. The defendant subsequently entered a timely plea and accepted responsibility for his actions. PSR ¶ 39. The defendant's model conduct between the entry of his plea and sentencing further supports the government's assessment that a sentence at the low-end of the guidelines is appropriate.

The defendant's remorse is also noteworthy. In a written statement provided to Probation, the defendant stated, in part:

> "Looking back, I am filled with guilt. I should have made the right decision of reporting to the authorities what was going on at the school. I knew that fraud was being committed and I perpetuated the scheme by continuing to certify students and falsify VA documents that showed the school was in full compliance with the VA requirements.
>
> I know with certainty that I made the wrong choice. My life and young family have

been completely turned upside down because of my actions. I am also deeply sorry to all the students that this affected as they were good people who didn't deserve a school that didn't put them first. I worry for them and hope that they were able to find a better path beyond [CTA] to improve their own futures.." PSR ¶ 42.

The defendant's history and characteristics are mitigating factors that weigh in favor of a sentence at the low-end of the guidelines.

> **3. The Need to Promote Respect for the Law and Adequately Deter This Type of Criminal Conduct**

There is a significant need for general deterrence in large-scale fraudulent schemes involving federal benefit programs. The size and scope of the Post-9/11 GI Bill program make fraud difficult to detect and prosecute. As a result, fraudsters all too often get away with defrauding the VA. As articulated by Assistant Attorney General Kenneth A. Polite, Jr. of the Criminal Division following the defendant and his co-conspirators' guilty pleas, "[t]he Post-9/11 GI Bill was enacted to aid our military veterans and their families on behalf of a nation grateful for their service. These frauds drain funds from a vital veterans' program and undermine public faith in the administration of government. These cases demonstrate the Criminal Division's clear commitment to protecting the integrity of federal programs and to holding offenders who would abuse and exploit these programs accountable."[1] Similarly, in connection with the announcement of charges against the defendant and his co-conspirators, Inspector General Michael J. Missal of the VA emphasized the importance of "[s]afeguarding Post-9/11 GI Bill education benefit funds reserved for deserving veterans" and "hold[ing] accountable those who would defraud VA's benefit programs."[2]

This case is unusual in that the defendant has taken steps – on his own initiative

---

[1] https://www.justice.gov/opa/pr/justice-department-announces-enforcement-action-involving-over-100-million-losses-department.
[2] *Id.*

7

immediately following the entry of his guilty plea – to advance the goal of general deterrence. In the written statement he provided to Probation, the defendant noted:

> "I am also committed to assisting the VA and other VA SCO's. I am working with the VA to share my story, specifically, where I went astray and the consequences of my actions in the hope that I can help deter other VA SCOs from engaging in fraud and help the VA catch similar schemes before they are able to carry out fraud such as what happened at [CTA]."

The defendant put his words into action over the last year by preparing two videos for use in VA trainings and conferences.

The government has no reason to believe the defendant will reoffend in the future. On many occasions, the defendant has expressed deep regret for his conduct. The defendant has no criminal history, and he has adhered to every provision of the plea agreement and bond conditions since they were entered. Under the circumstances, the government submits that the need for deterrence should factor in favor of a sentence at the low-end of the guideline.

### 4. The Need to Avoid Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably … [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States,* 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533. A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145

(7th Cir. 2013).

Several defendants have recently been sentenced for fraud involving Post-9/11 GI Bill schemes, many of whom defrauded the VA out of substantially less money than the defendant and were thus entitled to a lower adjustment for loss amount under U.S.S.G. § 2B1.1(b)(1)(M)). *See, e.g., United States v. Meers*, No. 2:22-cr-13 (S.D. Ga. Dec. 8, 2022) (defendant defrauded the VA out of more than $6 million, sentenced to 54 months in prison); *United States v. Davis,* No. 3:20-cr-00575-N (N.D. Tex. Sept. 21, 2021) (defendant defrauded the VA out of approximately $72 million, sentenced to 19 years in prison); *USA v. Grobes,* No. 2:16-cr-154 (E.D. Va. Mar. 8, 2017) (defendant defrauded the VA out of approximately $4.5 million, sentenced to 63 months in prison). However, at least two defendants with offense levels slightly higher than the defendant (OL 24), who were not leader/organizers and also received downward departures, were sentenced to probation. *See United States v. Walden*, No. 1:21-cr-00521-TNM (D.D.C. July 8, 2022) (defendants sentenced to 24 months' probation where government recommended departure of 12 offense levels, bringing low end of guideline range from 51 months to 10 months).

## IV. RESTITUTION

The provisions of the Mandatory Victim Restitution Act apply in this case, and the government is seeking an order of restitution pursuant to 18 U.S.C. § 3663A(c)(1). Section 3663A(c)(1) mandates full restitution in this case because Section 371 is a Title 18 "offense against property…committed by fraud or deceit" in which "an identifiable victim or victims has suffered a physical injury or pecuniary loss." Pursuant to the Plea Agreement and Section 3663(a)(3), the government respectfully requests that the Court enter an order of restitution in the amount of $76,759,775 payable to the victim in this case, the VA. Plea Agreement ¶ 12. This is the amount of the conspiracy loss associated with the Riverside facility, where the defendant worked.

V. **CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court: (1) find the defendant's guideline range is between 46 and 57 months' imprisonment, (2) grant the government's motion for a downward departure for the reasons set forth in the sealed supplement to this memorandum, and (3) sentence the defendant to a term of 23 months' imprisonment, one year of supervised release, payment of a $100 mandatory special assessment and restitution to the VA consistent with the terms agreed to by the parties. The government submits that this sentence is sufficient, but not greater than necessary, to achieve the statutory purposes of sentencing.

Respectfully submitted,

GLENN S. LEON
Chief, Fraud Section
Criminal Division
United States Department of Justice

By:  */s/* Lauren Archer
Lauren Archer, M.D. Bar # 1412160028
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Bond Building, Fourth Floor
Washington, D.C. 20530
Lauren.Archer2@usdoj.gov

**CERTIFICATE OF SERVICE**

On November 22, 2023, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System.

                                                  */s/ Lauren Archer*
                                                  Lauren Archer
                                                  Trial Attorney, Fraud Section
                                                  Criminal Division
                                                  United States Department of Justice